IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO


IN THE MATTER OF                    :


MANUFACTURING TECHNOLOGY :    CASE NO. 05-03663(SEK)
SERVICES, INC.
     DEBTOR                  :    CHAPTER 11

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FILED & ENTERED**

NOV 3 0 2005

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

## OPINION AND ORDER

We are concerned here with Nationwide Electronics and Realtran's ("the moving creditors'"), request for conversion to Chapter 7, opposed by the Debtor in possession, asserting it will file a disclosure statement and plan by January 23, 2006, or agree to the conversion on that date.  We convert the case to Chapter 7 for the following reasons.

We incorporate the Introduction and Background of our Opinion and Order entered on July 20, 2005, attached as exhibit A.  This shows Debtor has been involved in constant litigation since it filed for bankruptcy relief under Chapter 11 on April 18, 2005.  After we granted Banco Popular de P.R.'s motion forbidding the use of cash collateral effectively paralyzing a revolving line of credit, the Bank agreed to a new formula, releasing just enough funds to maintain Debtor's minimal operations designed to allow it to complete ongoing contracts and payoff its debt with the Bank.  At that point, the moving creditors sought a conversion of the case based on Debtor's inability to reorganize its failing business of manufacturing and developing electronic components.  Debtor objected to the conversion, indicating it was in the process of obtaining new contracts initially



2

revealing the information of these developments under seal.  The deadline for finalizing these new manufacturing agreements expired without further developments.  The moving creditors insisted on an evidentiary hearing, which we held on October 25, 2005.

During that hearing the Moving creditors showed Debtor did not secure any new manufacturing contracts or a new source of financing, it failed to pay the post petition rent for plant's locale, it had payed no post petition taxes and no electrical bills, it was functioning on power produced by an emergency electrical plant reducing its operation to about two days a week and its work force considerably, its projections and forecasts were unreliable and speculative.

Debtor showed it was manufacturing certain components for a new client based on specific purchase orders with a potential for generating $12 million dollar benefit should all go well.  Debtor admitted it failed to relinquish some extra space and reach an agreement with the Lessor for payment of post petition rent, as it needed the space for developing business with its new client.  Debtor admitted it was operating with electricity generated by its emergency power plant.[1]  Debtor also admitted its administrative expenses have increased mainly due to the inordinate amount of litigation since filing for bankruptcy protection.

11 U.S.C. § 1112 permits the court for cause, at its discretion,



---

[1]  However, it has negotiated an agreement with the power authority which we approved just recently.  The first installment was due on November 21st.  We do not know if Debtor was able to meet this commitment.

to convert or dismiss the case, whichever is in the best interest of creditors.   7 <u>Collier On Bankruptcy</u>, § 1112.04 (15th ed. rev.). According to this section, "continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" together with "an inability to effectuate a plan" are causes for converting the case to Chapter 7.

Here, the admitted increase in administrative expenses reduces assets available for distribution to the unsecured creditors.  In this case, these accumulated legal expenses are increasing due to Debtor's failure to pay its rent and electrical bills.  Ongoing litigation increasing these costs will not be reduced due to unending disputes with Distribution Control Systems Caribe, Inc., involving the rejection of its contract, the payment of inventory and the return of certain electrical meters.  Hence, the loss and diminution of estate assets caused by the increase in administrative expenses continues unabated, thereby reducing potential distribution to the unsecured creditors.



Debtor admits the likelihood of rehabilitation depends on two principal factors: developing new contracts with new clients and obtaining new financing.  Only one new client has emerged, and the new business is limited to certain specific purchase orders.  Debtor has been unable to secure any new source of financing.  Thus, aside from reducing the amount owed to Banco Popular de P.R., Debtor has not shown signs of recuperating its business edge and producing a plan that will lead towards a successful reorganization during the seven months it has enjoyed bankruptcy protection.

4

Wherefore, we grant the moving Creditor's request to convert this case to Chapter 7.

**SO ORDERED**, in San Juan, Puerto Rico, on November 30, 2005.

SARA DE JESUS
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN THE MATTER OF                    :

MANUFACTURING TECHNOLOGY            :    CASE NO. 05-03663(SEK)
SERVICES, INC.,
    DEBTOR                          :    CHAPTER 11

-------------------------------

**FILED & ENTERED**

**JUL 20 2005**

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

## OPINION AND ORDER

Before the court are the related motions concerning the use and prohibiting the use of cash collateral filed by Debtor in possession ("Debtor") and Banco Popular de P.R. (the "Bank"). The only issue presented by these motions is whether Debtor has met its burden of showing, within the context of this case, that the value of the collateral provides an equity cushion to ensure the Bank will receive what it bargained for, enabling Debtor to use the cash collateral for its reorganization. For reasons stated below we find Debtor has not met this burden.

### Introduction & Background

Debtor manufactures and sometimes also develops specialized electronic components to fit the need of its thirteen clients. An audited financial statement for its 2004 fiscal year ending on April 30th shows losses of $1,513,262. Losses increase for the fiscal year 2005 to $2 million. The cause of this financial distress is Debtor's inability to dispose of its excess inventory, settle disputes with three major clients (DCSC, COMMOCA & Emerson) over the payment of accounts receivables and purchasing of Debtor's inventory, periodic pricing of its product below profit margin, and an inability to increase its client base, obtain a cash infusion from a new investor or through refinancing its debt, amongst others.



2

On April 18, 2005, Debtor filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code. Within two weeks, the Bank filed its motion for an order prohibiting the use of cash collateral. Five days later Debtor responded, filing an urgent motion for the use of cash collateral. This was followed by a motion to assume the lease of the manufacturing plant opposed by the Lessor, a motion for relief from stay filed by the entity financing the company's insurance policies, and the latest motion filed by Debtor's major client for the assumption or rejection of a subcontract to manufacture parts for AMR systems pursuant to specified purchase orders.

We convened two brief preliminary hearings during which we determined that an evidentiary hearing was necessary to resolve the issue of adequate protection. Meanwhile, we approved an agreement with the Bank authorizing Debtor to use cash collateral for specific expenditures pursuant to specific budget and sales and cash projections until the final hearing. The final hearing began on July 12th ending on the 15th.

Upon consideration of admitted evidence, the testimony of the witnesses and arguments of counsel, we deny Debtor's request for the use of cash collateral for reasons stated below.

Factual Findings

A. Context of the Case

Debtor entered into a credit agreement whereby the Bank provided a revolving line of credit up to $2,200,000 in late 2001. The agreement calls for the deposit of all accounts receivables in a specific account, the application of a certain amount to the loan



3

pursuant to a formula based on Debtor's eligible accounts receivable, inventory, raw material, goods in process, etc., and the transfer of the balance to a working capital account. The collateral for this line of credit includes assignments of manufacturing agreements and insurance proceeds, accounts receivable, inventory, goods in process, finished goods, certain machinery and equipment and the personal guarantees of the company's President and CEO and his former spouse, who is the company's secretary and guarantees executed by various affiliated corporations. There is no evidence before the court as to what assets are owned by the guarantors nor of their net worth.

By July 11, 2005, Debtor owed $1,001,613.41 on the line of credit's principal and $33,988.74 of interest, for a total of $1,035,602.15. At this time it also owed the Bank $444,560.10 plus the monthly payments and late charges for April through July of 2005, on a term loan secured by a chattel mortgage over some of the company's machinery and equipment with an SBA guarantee. Debtor has not paid its monthly rent of $18,000 since the filing of the petition and owes pre petition rent of $90,304.55. According to GE Credit Capital Corp.'s proof of claim Debtor owes another $1,629,635,12 for certain leased equipment and machinery, and has also not paid the post petition monthly lease installments. Debtor executed insurance financing agreements covering its "package", "umbrella" and other insurance policies. It owes the monthly installments of May through July and, as of May 2005, owes a total of $17,174,63. Unearned premiums and a limited power of attorney to cancel these policies upon default serve as collateral for the insurance financing agreements.



4

Thus, Debtor owes considerable sums to other lenders, its landlord and the company which finances its insurance policies.

The Company is operating at 25% of its total capacity, equivalent to one and a half to two days per week. It has not been able to increase its client base which has eroded due to ongoing disputes with three of its clients. It did not meet the projections for cash flow which served as a basis for the agreement reached with the Bank for the limited use of cash collateral during June and July by 77%. During this time it paid the bank approximately $95,000 from operations, well below its projected payment of $414,566. It has been unable to sell its excess inventory since August of last year, a fact which Debtor admits is the main stumbling block to a successful reorganization. It has not presented any business plan for the continued operations. It submitted samples of new purchase orders which it claims show it can sustain its operations until reorganization plan can be filed and confirmed. Costs of operation were not presented.

B. Value of collateral securing repayment of the revolving line of credit

Debtor values the accounts receivables as of July 11, 2005 at $397,453.33 "net of the value of its disputed accounts receivable". The Bank values the accounts receivable as of May 4, 2005, at $314,975.90.

Debtor claims the value of its inventory as of July 8th is $3,149,841 without giving its method of valuation. The Bank claims that in an orderly liquidation of the inventory expenses would exceed

5

revenue by $143,000.000.

Debtor produced an appraisal of the machinery and equipment as of June 15, 2005, at $2,054,760 utilizing the market value approach. The Bank disputes the valuation claiming the appropriate valuation method to be used by an appraiser should be the net realizable value in an orderly liquidation. Debtor's appraiser admits that if this method were used, the market value of the machinery and equipment would have to be reduced by the cost of assembly, crating and shipping as there is no market for most of this equipment in Puerto Rico, plus other costs associated with a sale, such as brokerage fees. The Bank argues this valuation method would be more appropriate given the Debtor's over all financial picture and poor chances of reorganization.

## Discussion

Under the law, Debtor must obtain the consent or court authorization prior to use of cash collateral. 11 U.S.C. §363(c)(2). The law also provides the court shall prohibit or condition the use of cash collateral as is necessary to provide adequate protection to the secured lender's interest. 11 U.S.C. § 363(e). Code section 361 depicts some means of providing adequate protection which are not exclusive. In re O'Connor, 808 F. 2d 1393, 1397 (10th Cir. 1987). "Exactly what constitutes adequate protection must be decided on a case by case basis." In re Sharon Steel Corporation, et al., 159 B.R. 165, 169 (Bkrcty. W.D. Pa. 1993) (citing In re O'Connor, 808 F. 2d at 1396-97). "The existence of an equity cushion alone can constitute adequate protection." In re Sharon Steel Corp. 159 B.R. at 169. (cit. omitted). The debtor in possession has the burden of showing the

6

lender is adequately protected if the court permits the use the cash collateral. In re SEL-O-RAK Corp., 24 B.R. 5, 6 (Bkrtcy. S.D. Fla. 1982); 11 U.S.C § 363(o)(1).

Like the court in Sharon Steel, supra, we also believe it is improper to assess the valuation of assets in a vacuum. "While the market value of a debtor's assets may be sufficient to constitute adequate protection, a debtor's future operational plans may result in a rapid deterioration of the collateral. Where the equity cushion is insufficient in size or likely to erode, it cannot, standing alone, constitute adequate protection." In re Sharon Steel Corp. 159 B.R. at 169. (cit. omitted).

Here, we must decide under 11 U.S.C. § 363 the vexing problem of whether or not debtor in possession has met its burden of showing the Bank will have adequate protection if we permit the use of cash collateral proceeds to finance continued operations. This in turn depends upon a finding that the value of Debtor's assets exceeds the amount owed on its secured line of credit, thus providing an equity cushion for the lender.

Generally soft collateral such as cash, inventory and accounts are consumed in the operation of debtor's business and the most common form of adequate protection is a replacement lien. Ponoroff and Snyder, Commercial Bankruptcy Litigation § 7:22. A replacement lien in this case comes in the form of new orders from new clients. The evidence adduced at trial shows virtually no increase in the client base and insignificant amount of new orders. Furthermore, "[a]n equity cushion-a common method of adequate protection in connection



7

with real estate-rarely is a method of adequate protection in connection with the use of soft collateral because the equity cushion frequently erodes as debtor uses the collateral." Id.

Although Debtor and its accountant argue the operations will eventually show a profit, all disputes will be settled and there is a chance of reorganization justifying the valuation method it chose, the evidence shows that for the past two years Debtor has been operating with significant and increasing losses, Debtor has presented no business plan, disputes with clients have been on going since August of last year showing no signs of a successful conclusion in the near future, there has been only one sale of inventory to a Chinese entity, the client base has decreased despite Debtor's efforts at obtaining new clients, and there are no prospects for obtaining cash infusion from an investor or a refinancing of its debt. Therefore, we find the valuation of the collateral produced by the Debtor based on market value of an ongoing concern is unreliable.

WHEREFORE, Debtor has not met its burden of showing there is an equity cushion which may serve to adequately protect the Bank. We therefore grant the Bank's motion prohibiting Debtor from using cash collateral, except to pay for the insurance premiums to A.I. Credit Corporation mentioned in the pending motion for lift of stay, and otherwise, deny Debtor's motion for the use of cash collateral.

The Clerk shall schedule a status conference for August 11, 2005 at 11:00 a.m.

SO ORDERED, in San Juan, Puerto Rico, on July 20, 2005.

SARA DE JESUS
U.S. Bankruptcy Judge

## Transmission Report

Date/Time 7-20-05; 3:35PM
Local ID 787 977 6010
Local Name US BANKRUPTCY COURT
Company Logo DISTRICT OF PUERTO RICO

# This document was confirmed.
## (reduced sample and details below)
## Document Size Letter-S

UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO-RICO
FAX COVER LETTER

Number of pages (including cover): 8

TO: Jose Raul Cancio Bigas          Fax# (787) 758-9234
    Sergio Ramirez de Arellano            (787) 765-2913
    Brian Tester                          (787) 752-3124
    A.L. Credit Corp, Miguel Gierbolini   (787) 620-0687
    U.S.T.                                (787) 729-7449

FROM: Eduardo Bujosa
Case Manager *SEK Team*          Fax #: 787-977-6010

U.S. Bankruptcy Court          Tel. #: 787-977-6109
District of Puerto Rico

SUBJECT:
Case # 05-03663 Manufacturing Technology Services, Inc.

See the attached Opinion and Order

*IF YOU DO NOT RECEIVE THE AMOUNT OF PAGES SPECIFIED ABOVE, PLEASE CALL (787) 977-6109*

Total Pages Scanned : 8 Total Pages Confirmed : 8

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 419 | 97877589238 | 7-20-05; 3:32PM | 3'00" | 8/ 8 | EC | | CP 14. 4 |

Notes :
EC: Error Correct        RE: Resend              PD: Polled by Remote      MB: Receive to Mailbox
BC: Broadcast Send       MP: Multi-Poll          PG: Polling a Remote      PI: Power Interruption
CP: Completed            RM: Receive to Memory   DR: Document Removed      TM: Terminated by user
HS: Host Scan            HP: Host Print          FO: Forced Output         WT: Waiting Transfer
HF: Host Fax             HR: Host Receive        FM: Forward Mailbox Doc.  WS: Waiting Send

## Transmission Report

| | |
|---|---|
| Date/Time | 7-20-05; 3:38PM |
| Local ID | 787 977 6010 |
| Local Name | US BANKRUPTCY COURT |
| Company Logo | DISTRICT OF PUERTO RICO |

# This document was confirmed.
## (reduced sample and details below)
## Document Size   Letter-S

UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO
FAX COVER LETTER

Number of pages (including cover): 8

TO:  Jose Raul Cancio Bigas         Fax# (787) 758-9238
     Sergio Ramírez de Arellano            (787) 765-2973
     Brian Tester                          (787) 759-3124
     A.L. Credit Corp. Miguel Giesbolini   (787) 620-6687
     U.S.T.                                (787) 729-7449

FROM: Eduardo Bujosa
Case Manager *SEK Team*              Fax #: 787-977-6010

U.S. Bankruptcy Court                Tel. #: 787-977-6109
District of Puerto Rico

SUBJECT:
Case # 05-03663 Manufacturing Technology Services, Inc.

See the attached Opinion and Order

*IF YOU DO NOT RECEIVE THE AMOUNT OF PAGES SPECIFIED ABOVE, PLEASE CALL: (787) 977-6109*

Total Pages Scanned : 8  Total Pages Confirmed : 8

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|---|---|---|---|---|---|---|---|---|
| 1 | 421 | 97877652973 | 7-20-05; 3:35PM | 1'43" | 8/ 8 | EC | | CP 28.8 |

Notes :
EC: Error Correct        RE: Resend             PD: Polled by Remote    MB: Receive to Mailbox
BC: Broadcast Send       MP: Multi-Poll         PG: Polling a Remote    PI: Power Interruption
CP: Completed            RM: Receive to Memory  DR: Document Removed    TM: Terminated by user
HS: Host Scan            HP: Host Print         FO: Forced Output       WT: Waiting Transfer
HF: Host Fax             HR: Host Receive       FM: Forward Mailbox Doc. WS: Waiting Send

## Transmission Report

| | |
|---|---|
| Date/Time | 7-20-05; 4:17PM |
| Local ID | 787 977 8010 |
| Local Name | US BANKRUPTCY COURT |
| Company Logo | DISTRICT OF PUERTO RICO |

This document was confirmed.
  (reduced sample and details below)
Document Size Letter-S

UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO
FAX COVER LETTER

Number of pages (including cover):8

TO:  Jose Raul Cancio Bigas        Fax# (787) 758-9233
     Sergio Ramirez de Arellano         (787) 765-2073
     Brian Tester                       (787) 757-3124
     A.I. Credit Corp. Miguel Gierbolini (787) 620-0687
     U.S.T.                             (787) 729-7449

752-3108

FROM: Eduardo Bujosa
Case Manager  *SEK Team*        Fax #: 787-977-6015

U.S. Bankruptcy Court           Tel. #: 787-977-6103
District of Puerto Rico

SUBJECT:
Case # 05-03663 Manufacturing Technology Services, Inc.

See the attached Opinion and Order

*IF YOU DO NOT RECEIVE THE AMOUNT OF PAGES SPECIFIED ABOVE, PLEASE CALL: (787)-977-6109*

Total Pages Scanned : 8  Total Pages Confirmed : 8

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 443 | 97877593108 | 7-20-05; 4:13PM | 3'02" | 8/ 8 | EC | | CP 14.4 |

Notes :
EC: Error Correct      RE: Resend            PD: Polled by Remote   MB: Receive to Mailbox
BC: Broadcast Send     MP: Multi-Poll        PG: Polling a Remote   PI: Power Interruption
CP: Completed          RM: Receive to Memory DR: Document Removed   TM: Terminated by user
HS: Host Scan          HP: Host Print        FO: Forced Output      WT: Waiting Transfer
HF: Host Fax           HR: Host Receive      FM: Forward Mailbox Doc. WS: Waiting Send

## Transmission Report

Date/Time          7-20-05; 3:40PM
Local ID           787 977 6010
Local Name         US BANKRUPTCY COURT
Company Logo       DISTRICT OF PUERTO RICO

# This document was confirmed.
## (reduced sample and details below)
## Document Size  Letter-S

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF PUERTO-RICO
### FAX COVER LETTER

Number of pages (including cover):8

TO:   Jose Raul Cancio Bigas          Fax# (787) 753-9238
      Sergio Ramirez de Arellano           (787) 765-2973
      Brian Testes                         (787) 759-3124
      A.I. Credit Corp. Miguel Giesbolini  (787) 620-5697 ✓
      U.S.T.                               (787) 729-7449

FROM: Eduardo Bujosa
Case Manager *SEK Team*                Fax #: 787-977-6010

U.S. Bankruptcy Court                  Tel. #: 787-977-6109
District of Puerto Rico

SUBJECT:
Case # 05-03663 Manufacturing Technology Services, Inc.

See the attached Opinion and Order

*IF YOU DO NOT RECEIVE THE AMOUNT OF PAGES SPECIFIED ABOVE, PLEASE CALL: (787) 977-6109*

Total Pages Scanned  :  8   Total Pages Confirmed :  8

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|-----|-----|----------------|------------|----------|-------|------|----------|---------|
| 1 | 423 | 97876200687 | 7-20-05; 3:38PM | 1'46" | 8/ 8 | EC | | CP 28.8 |

Notes :
EC: Error Correct          RE: Resend              PD: Polled by Remote        MB: Receive to Mailbox
BC: Broadcast Send         MP: Multi-Poll          PG: Polling a Remote        PI: Power Interruption
CP: Completed              RM: Receive to Memory   DR: Document Removed        TM: Terminated by user
HS: Host Scan              HP: Host Print          FO: Forced Output           WT: Waiting Transfer
HF: Host Fax               HR: Host Receive        FM: Forward Mailbox Doc.    WS: Waiting Send

## Transmission Report

| | |
|---|---|
| Date/Time | 7-20-05; 3:43PM |
| Local ID | 787 977 6010 |
| Local Name | US BANKRUPTCY COURT |
| Company Logo | DISTRICT OF PUERTO RICO |

# This document was confirmed.
## (reduced sample and details below)
## Document Size Letter-S

---

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**
**FAX COVER LETTER**

Number of pages (including cover): 8

TO: Jose Raul Cancio Bigas     Fax# (787) 758-9258
    Sergio Ramirez de Arellano     (787) 765-2973
    Brian Tester     (787) 753-3124
    A.L. Credit Corp. Miguel Gierbolini     (787) 620-0687
    U.S.T.     (787) 729-7449

FROM: Eduardo Bujosa
Case Manager *SEK Team*     Fax #: 787-977-6010

U.S. Bankruptcy Court     Tel. #: 787-977-6109
District of Puerto Rico

SUBJECT:
Case # 05-03663 Manufacturing Technology Services, Inc.

See the attached Opinion and Order

*IF YOU DO NOT RECEIVE THE AMOUNT OF PAGES SPECIFIED ABOVE, PLEASE CALL (787) 977-6109*

---

Total Pages Scanned : 8    Total Pages Confirmed : 8

| No. | Doc | Remote Station | Start Time | Duration | Pages | Mode | Comments | Results |
|---|---|---|---|---|---|---|---|---|
| 1 | 424 | 97877297449 | 7-20-05; 3:41PM | 1'32" | 8/ 8 | EC | | CP 28.8 |

Notes :
| | | | |
|---|---|---|---|
| EC: Error Correct | RE: Resend | PD: Polled by Remote | MB: Receive to Mailbox |
| BC: Broadcast Send | MP: Multi-Poll | PG: Polling a Remote | PI: Power Interruption |
| CP: Completed | RM: Receive to Memory | DR: Document Removed | TM: Terminated by User |
| HS: Host Scan | HP: Host Print | FO: Forced Output | WT: Waiting Transfer |
| HF: Host Fax | HR: Host Receive | FM: Forward Mailbox Doc. | WS: Waiting Send |